**Hearing Date: January 9, 2019 at 11:00 a.m.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| In re: | Chapter 7 |
|---|---|
| Stanley Lawrence DiStefano, Jr. | Case No. 16-10694-rel |
| Debtor. | |

### DECLARATION OF KEVIN BROTSPIES, ESQ. IN SUPPORT OF OBJECTION OF ENDURANCE AMERICAN INSURANCE COMPANY TO DEBTOR'S AMENDED EXEMPTIONS

I, Kevin Brotspies, hereby declare:

1. I am a partner at McElroy Deutsch Mulvaney & Carpenter, LLP and represent Endurance American Insurance Company ("Endurance") in this matter. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently to those facts.

2. I submit this Declaration as a supplement to Endurance's previously filed objection [Doc. 305] (the "Endurance Objection")[1] to the amended Schedule C (the "Amended Schedule C") filed by Stanley DiStefano (the "Debtor").

3. The Debtor was examined by counsel for the United States Trustee on August 22, 2018 (the "2004 Exam") which I attended.[2] Endurance reserved its rights to supplement the Endurance Objection when the 2004 Exam transcript became available. Endurance has now received a copy of the 2004 Exam transcript (the "Transcript"). A copy of the Transcript is attached hereto as Exhibit A.

4. One thing that has become abundantly clear following the 2004 Exam is that the Debtor has categorically failed to make the full and thorough disclosures required by the

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Objection.
[2] Counsel for Nancy Burbridge and counsel for Endurance also questioned the Debtor during the 2004 Exam.

1

Bankruptcy Code regarding his assets, business interests and pre-petition and post-petition transfers. Instead, the Debtor determined what he deemed worthy of disclosing. Because of the lack of supporting documents regarding the Debtor's undisclosed accounts and business interests available at the time of the 2004 Exam, far more questions were raised than answered.[3]

5. What is also clear is that the Debtor is, and was as of the Petition Date, domiciled in the state of New York. Although the Debtor testified that he has owned the Hawaii Property for many years, he testified that he has only been to Hawaii for one two-week period in the last two years and has spent the rest of the time in New York (with the exception of a trip to France.)

See Tr. P. 175

> **Q.** In the last two years, is it correct to say that you've spent no more than two weeks in Hawaii?
> **A.** That's true.
> **Q.** In the last two years how much time have you spent in the State of New York?
> **A.** The rest of the time.

6. As further evidenced by his responses during the 2004 Exam, this Debtor has shown bad faith during the course of this bankruptcy proceeding. The 2004 Exam testimony shows that Debtor's filed and sworn Schedules (See Doc. No. 79) and Statement of Financial Affairs [Doc. 80] are inaccurate and incomplete.

7. The following is a partial list of certain egregious examples of Debtor's previously undisclosed assets, business interests, and transfers:

   a) The Debtor did not disclose IRA distributions he received and which were listed on his 2016 federal tax return.

---

[3] For example, the documents requested during the 2004 Exam (See Tr. 5) include, among other things, documents regarding a Provident Life Insurance Policy liquidated and given to the Debtor's son and documents regarding the previously undisclosed business of Chris-Stan Contracting.

See Tr. 76:3-17[4]

> **Q.** Is Exhibit 5C a true and correct copy of|
> your 2016 federal tax return?
> **A.** It appears to be, yes.
> **Q.** Is this a copy of the tax return that was
> filed with the IRS?
> **A.** Yes.
> **Q.** In 2016 you had $13,558 in IRA
> distributions; correct?
> **A.** That's what it says, yes.
> **Q.** And $53,676 from pensions and annuities;
> correct?
> **A.** Yes.
> **Q.** Did you disclose your IRA distributions in
> your Statement of Financial Affairs, Exhibit 2?
> **A.** I did not.

b) The Debtor had an interest of more than 5% in various companies: Chris-Stan Partners LP, Chris-Stan Management, Inc., Chris-Stan Contracting LLC (collectively, the "Chris-Stan Entities") which he did not disclose.

See Tr. 72:2-18:

> **Q.** On Page 11 of your Statement of Financial
> Affairs, which is Exhibit 2.
> **A.** Yep.
> **Q.** --Part 11 --
> **A.** Uh-huh.
> **Q.** --asks you within four years before you
> filed, or in this case would be involuntary, asks
> you to list your ownership and connections with

---

[4] The Debtor testified that certain of the pension distributions were Christi's although he could not say what portion was. During the 2004 Exam the Debtor stated he did not know what percentage might be Christi's. However, there is no question that the Debtor did not disclose to the Bankruptcy Court the portion that was his on his schedules. See Tr. 76: 18-25, 77:2-3
> **Q.** And did you disclose your pension and
> annuity payments of $53,676 in your Statement of
> Financial Affairs?
> **A.** Some of this could be my wife's; right?
> **Q.** Does your wife have a pension or annuity?
> **A.** She had one.
> **Q.** Well, how much is yours and how much of
> that $53,000 is your wife's?
> **A.** I don't know. Sitting here right now, I
> don't know what the split would be.

> businesses which you are a shareholder that owns at least five percent, an officer, a partner. Did you list any of the Chris-Stan entities?
> **A.** I did not.
> **Q.** Why did you not list any of the Chris-Stan entities?
> **A.** At the time they were all inactive companies and they hadn't done anything in years, so I didn't really feel I had to.

c) The Debtor did not disclose a bank account of the Chris-Stan Contracting, LLC to the Bankruptcy Court, although such bank account appears to have been in use by Debtor for living expenses following the filing of the involuntary petition against him, and was closed during the bankruptcy.

See Tr. 72:19-22:

> **Q.** Well, you were using the bank account of Chris-Stan Contracting?
> **A.** Yeah. I told you, I explained that to you.

and Tr. 86:24-25, 87:2-13:

> **Q.** Have you had access to an account at Pioneer Savings Bank?
> **A.** I believe that's where the Chris-Stan Contracting account was located, yes. I was mistaken when you asked me that the first time, which is now closed. It's been closed for a while.
> **Q.** And when was the-- Well, first which Chris-Stan entity?
> **A.** Contracting.
> **Q.** And when was the Chris-Stan Contracting account closed?
> **A.** Somewhere between a year or two ago. I don't know exactly. A year and a half ago from now, something like that.
> **Q.** Before or after the bankruptcy was filed, if that helps. I'm just asking to see if that helps your memory?
> **MR. LEVINE:** The bankruptcy was commenced on April 20 of 2016.
> **A.** Right. I think it was probably after that. Initially I was told that I had no

4

> restrictions on because it was a--
> **MR. LEVINE:** Involuntary.
> **A.** --involuntary petition. It wasn't an
> actual filing at the time. It was a petition. I
> think the filing occurred last July.

Debtor's evolving testimony on the Chris-Stan entities and the Chris-Stan Contracting LLC bank account again raises more questions than answers and suggests that the Debtor has <u>still</u> not thoroughly disclosed all of his assets and transfers during the periods relevant to the bankruptcy.[5]

d) The Debtor cashed in a life insurance policy with a cash value of between $20,000 and $30,000 and gave it to his son, potentially within two years of the bankruptcy filing, but did not list such transfer.

See Tr. 80:22-25, 81:2-7

> **Q.** Since 2014 have you transferred anything,
> any property, accounts, assets to your children or
> an entity controlled by your children? And let me
> qualify that with saying over $500. I'm looking for substantial, meaningful assets. I'm not asking
> if you gave them twenty bucks.
> **A.** The only thing that comes to mind, and I
> already referenced it before, was a life insurance

---

[5] The use of the Chris-Stan Contracting LLC bank account contradicts the prior testimony of the Debtor during the 2004 Exam that all of the Chris-Stan entities were inactive. In addition, the Debtor indicated that in 2014 his Bank of America account was frozen. This is presumably because of Endurance's restraints. Therefore, during that time the Debtor utilized the Chris-Stan Contracting LLC bank account. See Tr. 64:17-25, 65:
> **Q.** What bank account did you use for food, clothing and shelter in 2014?
> **A.** It would have been the Bank of America account up until December of that year when it was frozen.
> **Q.** Then what bank did you start using?
> **A.** Huh?
> **Q.** Then what bank did you start using?
> **A.** Well, we used the Chris-Stan Contracting
> bank account for a while because we had no other
> bank account. My wife and I both used it. Eventually the Bank of America account was unfrozen.

It is notable that this account existed as of the time of the involuntary filing and was closed sometime thereafter all without any disclosure to the Bankruptcy Court. It appears that this Debtor, like his sister Nancy Jean Burbridge (Case No. 15-10839), used the benefit of the automatic stay in the bankruptcy process to unfreeze accounts that had been restrained by Endurance while at the same time either using and/or disposing of assets within their sole discretion without disclosure to or permission from the Bankruptcy Court

5

> policy that I had gotten on my son's life and I gave it to him because it was on his life.

And Tr. 147

> **Q.** Okay, okay, thank you. You had testified that the only transfer that you've had since 2014 to your children was a transfer of a life insurance policy on your son's life and you transferred that to your son?
> **A.** Yeah.
> **Q.** Did that have a cash value?
> **A.** Yes.
> **Q.** And what was the cash value on that?
> **A.** If I can remember $20,000 to $30,000 range, somewhere in that range.

e) The Debtor did not fully disclose interests in multiple mutual funds and other investment interests held at the time of the involuntary filing. He also does not appear to have disclosed accounts that were closed within the two years prior to the involuntary filing.

See Tr. 35:20-25, 36:2-10.

> **Q.** Let's do it this way. In the past three years did you have an account at Franklin Templeton?
> **A.** I did.
> **Q.** What kind of account? How would you describe that account?
> **A.** It was a mutual fund, mutual fund account.
> **Q.** So let's take a look, go back a page in Exhibit 1, Question Number 18. How did you answer Question 18 which asks for bonds, mutual funds or publicly-traded stocks?
> **A.** No.
> **Q.** Is that correct?
> **A.** No. I just told you I had a Franklin Templeton account.

And Tr. 24:9-25, 87:2:

> **Q.** You listed $2,000 in stocks?
> **A.** Yeah.
> **Q.** What stocks are those?
> **A.** Just a few mutual funds.

6

> **Q.** Which mutual funds?
> **A.** Well, the ones that we were talking about before.
> **Q.** Specifically which ones are left or were left at the time you filled out the schedule?
> **A.** This is over a year ago. I think there was some American Fund. There was Franklin Templeton. I think all the ones that were listed there. I can't think of the other ones.
> **Q.** OFI? Was OFI still open?
> **A.** No, I don't think that was one of them. There was three main ones, American Funds, Franklin Templeton and Fidelity. I think there's a small

8. Also of interest are the rental fees of approximately $60,000 per year that the Debtor's wife receives through renting out the Hawaii Property for part of the year. The Hawaii Property is held as entireties property and therefore any income from it is arguably entireties property subject to Endurance's lien and part of the Debtor's bankruptcy estate.[6] None of this income was disclosed by the Debtor prior to the 2004 Exam.

See Tr. Page 176

> **Q.** You testified that the tenants, I'll call them the tenants, pay your wife $60,000 a year?
> **A.** They have so far, yeah.
> **Q.** How many years have they been doing that?
> **A.** I think it's been two years.

9. Thus, not only is the Debtor continuing to own a luxury vacation property in Hawaii, but the property is also being rented out for substantial sums without any of such funds going to the estate – or even paying the taxes associated with the property to protect the asset for creditors.

See Tr. 150-151

> **Q.** Now we've looked at Exhibit 8. That was I believe related to insurance for the Hawaii property and I just am trying to get an

---

[6] Endurance reserves all rights regarding whether proceeds from the Hawaii Property is characterized as entireties property.

7

> understanding for what's been paid and what is still outstanding for the Hawaii property. Is it a co-op, a condo?
> **A.** It's a condominium.
> **Q.** And I know the taxes have not been paid?
> **A.** Yep.
> **Q.** For how many years?
> **A.** Probably about three.
> **Q.** Longer than three or is it only three?
> **A.** Three or four. I don't know. You lose track of time after a while.

10. As set forth in the Endurance Objection, the Trustee should be permitted to move to sell the Hawaii Property pursuant to Section 363(h). This is a luxury, vacation property and the benefit to selling it to the Debtor's joint creditors outweighs any detriment to Christi, who is also jointly indebted to Endurance. The third prong of Section 363(h) regarding whether the benefit to the estate of a sale of the whole property outweighs the detriment to the co-owner is less stringent when it comes to selling vacation homes. *See In re Morris*, 115 B.R. 752, 756–57 (Bankr. E.D.N.Y. 1990) ("Section 363(h) has also been used to sell vacation homes where the test of detriment of the sale will be less stringent."). Thus, there is ample basis for a sale to be permitted under the Section 363 standard. Allowing this property to be sold will also free up assets for distribution to the Debtor's other creditors and thus benefits the estate as a whole.

11. For the reasons set forth herein and in the Endurance Objection, Endurance respectfully requests entry of an order denying the Debtor's exemption in the Hawaii Property.[7]

---

[7] Endurance reserves the right to further supplement its objection at or prior to the hearing as additional documents are to be produced by the Debtor which may provide additional bases for objection.

I declare, certify, verify and state under penalty of perjury that the foregoing is true and correct to the best of my knowledge. I am aware that if any other statements made by me are willfully false, I am subject to punishment.

DATED: New York, New York
         January 8, 2019

Respectfully submitted,

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

By: */s/ Kevin S. Brotspies*
Kevin S. Brotspies
McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
*Attorneys for*
*Endurance American Insurance Company*
225 Liberty Street, 36th Floor
New York, New York 10281
(212) 483-9490