UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In Re:

    Stanley Lawrence DiStefano, Jr.,                        Case No. 16-10694

                                                            Chapter 7

                                Debtor.

_____

APPEARANCES:

Lemery Greisler LLC                                                     Paul A. Levine, Esq.
*Attorneys for the Debtor*
50 Beaver Street
Albany, NY 12207

McElroy, Deutsch, Mulvaney & Carpenter, LLP           Kevin S. Brotspies, Esq.
*Attorneys for Endurance American Insurance Company*
88 Pine Street, 24th Floor
New York, NY 10005

Primmer Piper Eggleston & Cramer PC                   Douglas J. Wolinsky, Esq.
*Attorneys for Chapter 7 Trustee*
30 Main Street, Suite 500
P.O. Box 1489
Burlington, VT 05402-1489

McNamee Lochner P.C.                                       Kevin Laurilliard, Esq.
*Attorneys for Nancy Burbridge and Janice DiStefano*
677 Broadway
Post Office Box 459
Albany, NY 12201-0459

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

       The current matters before the Court are objections by Endurance American Insurance

Company ("Endurance" or "Creditor"), Douglas J. Wolinsky, Esq., Chapter 11 Trustee

("Trustee"), and Nancy Burbridge ("Burbridge") to an amended exemption claimed by Stanley

Lawrence DiStefano, Jr. ("DiStefano" or "Debtor") regarding certain real property in Hawaii

1

located at 68-1050 Mauna Lani Point Drive, Kamuela, Hawaii ("the Property"). The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A), (b)(2)(B), and 1334.

## BACKGROUND

The Debtor served as managing member of Green Island Construction Group, LLC ("LLC"). Due to certain financial requirements involving projects that the LLC bid on, a performance/payment bond was necessary. Endurance provided the necessary bond. The LLC, and a second company that the Debtor managed, guaranteed repayment to Endurance should the bond ever be called into play. However, personal guarantees by seven individuals were the true *quid pro quo* for the issuance of the required bonding. That warranty of repayment was given by the Debtor, his wife, two of his sisters, a brother-in-law, and two nephews. Four of the seven, the Debtor, his sisters, and one of the nephews are/or have been in this Court due to the collection efforts of Endurance.

These parties have experienced multiple bouts of mediation in this Court and litigation in New York State Supreme Court. The guarantors have battled Endurance and each other. One of the nephew guarantors filed suit post-petition against the Debtor in New York State Supreme Court averring fiduciary improprieties; the Debtor responded in this Court by seeking damages for an alleged violation of the automatic stay. Even the Debtor's mother-in-law has written to the Court asserting financial malfeasance involving certain family members including the Debtor. Familial ties have meant little or nothing; this situation represents the perfect storm of family dysfunction. These cases have also presented a plethora of watershed issues leading to several appeals. In the Debtor's chapter 7, the interesting question concerns the Property, DiStefano's second amended claim of exemption for it, and party in interest objections to it.

## FACTS

The following facts are taken from the pleadings and the "Joint Statement of Stipulated Facts and Issues of Law" ("Joint Stip") filed February 1, 2019. (ECF No. 334.)

1) Petitioning Creditor Janice M. DiStefano commenced this involuntary chapter 7 case against the Debtor on April 20, 2016.[1] (ECF No. 1.)

2) An Order for Relief, on consent, was entered on June 9, 2017. (ECF No. 67.)

3) On his "Schedule A/B: Property" filed on June 23, 2017, the Debtor discloses a 100% interest in 10 Sage Estate, Albany, New York ("Sage Estate"). (ECF No. 79.)

4) The Debtor also discloses an ownership interest in the Property. The nature of the interest claimed is a tenancy by the entirety ("TBE") with "[a]t least one of the debtors and another."[2] *Id.*

5) On his "Schedule C: The Property You Claim as Exempt" filed on June 23, 2017, the Debtor, in response to the question, "Which set of exemptions are you claiming?" elects "state and nonbankruptcy exemptions under 11 U.S.C. § 522(b)(3)." *Id.*

6) In furtherance of this election, the Debtor asserts an exemption for Sage Estate in the amount of $125,000 pursuant to the New York Civil Practice Law and Rules (CPLR) § 5206(a). *Id.*; CPLR § 5206(a) (McKinney 2017).

7) No exemption was claimed for the Property. (ECF No. 79.)

8) The Debtor filed amended schedules on June 28, 2017 that did not change his original Schedule A/B or C real property information or elections. (ECF No. 85.)

---

[1] Janice DiStefano is one of the Debtor's sisters. However, she is not a co-indemnitor to Endurance.
[2] The Court notes that in the Joint Stip in paragraphs eighteen to twenty regarding the acquisition and ownership of the Property, the Stipulation merely states that parties agree that the "Debtor represents . . ." the facts within these paragraphs. (Joint Stip ¶ 18–20, ECF No. 334.)

9)      The Debtor's case was converted from chapter 7 to chapter 11 on July 6, 2017. (ECF No. 88.)

10)     On December 20, 2017, Endurance timely filed a Proof of Claim for $1,769,317.00.[3] (Claim 13-1.)

11)     On May 15, 2018, the Debtor amended his schedules a second time. (ECF No. 242.)

12)     The Debtor did not amend Schedule A/B. *Id.*

13)     The Debtor's second amended Schedule C maintains the same exemption for Sage Estate. *Id.*

14)     The second amended Schedule C claims, for the first time, an exemption in the Property pursuant to 11 U.S.C. § 522(b)(3)(B) ("(b)(3)(B)") and Hawaii Revised Statute § 509-2. *Id.*

15)     The amount of the exemption stated is "100% of fair market value, up to any applicable statutory limit." *Id.*

16)     Timely objections to the second amended Schedule C were filed by Endurance, Douglas J. Wolinsky, Esq., Chapter 11 Trustee, and Nancy Burbridge.[4] (ECF Nos. 305, 303, 260.)

---

[3] On May 10, 2018, the Debtor objected to Endurance's claim. The Debtor's objection became fully submitted on August 9, 2019 and is pending a decision. At the time of this Memorandum-Decision and Order, the Court has not entered an order disallowing any part of Endurance's claim.

[4] On June 25, 2018 and September 14, 2018, Nancy Burbridge - one of the Debtor's other sisters and co-indemnitors - and the Chapter 11 Trustee, filed objections to the Debtor's exemption of the Property, respectively. (ECF Nos. 260, 303.) On January 17, 2019, the Court issued a Briefing Order directing the objecting parties to file supplemental briefs no later than February 15, 2019. (ECF No. 328.) Neither Nancy Burbridge nor the Chapter 11 Trustee filed a supplemental brief as mandated by the Briefing Order. For this reason, neither parties' arguments are addressed in this decision.

4

17) On or about September 22, 2011, the Debtor and his wife executed a General Agreement of Indemnity ("Agreement", ECF No. 334, Ex. E) as indemnitors, in favor of Endurance, as indemnitee.[5] (Joint Stip ¶ 24.)

18) As part of said indemnification, the Debtor and his spouse agreed to joint and several liability.[6] (Agreement ¶ 3.3.)

19) On December 8, 2014, the New York State Supreme Court, index number 65371412014, issued an order to show cause requiring the Debtor and his spouse, among five others, to deposit certain collateral and, if not, the order was to "operate as a lien, mortgage or other encumbrance on the assets of each Defendant in the amount of $859,474.09 and Plaintiff is authorized to file the [December 8, 2014] Order . . . wherever . . . the Defendants' property may be located." (ECF No. 277, Ex. C.)

20) The Debtor and his spouse consented to continuations of the December 8 order via stipulation and order signed on January 13, 2015 (*Id.,* Ex. D), February 6, 2015 (*Id.*, Ex. E), and March 10, 2015 (*Id.,* Ex. G).

---

[5] Paragraph 4.3 of the Agreement states:
PAYMENTS - In the event of any Loss by Surety, the Principal and each of the other Indemnitors agree to immediately reimburse Surety for any and all payments made by Surety, plus interest from the date of Surety's payment at the rate of 9% per annum or the maximum rate allowable by law, whichever is less. In any accounting among Surety and the Principal and any of the other Indemnitors or in any claim or suit by Surety against Principal or any of the other Indemnitors with respect to a Loss, the vouchers or other evidence of any Loss payments made by Surety shall be prima facie evidence of the fact and amount of the Principal's and each of the other Indemnitors' liability to Surety for such Loss; and Surety shall be entitled to reimbursement for all disbursements made in good faith under the belief that Surety is, was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency actually existed.

[6] Paragraph 3.3 of the Agreement states:
JOINT AND SEVERAL LIABILITY- to be jointly and severally liable with the Principal and each of the other Indemnitors for all of the Principal's and such other Indemnitors' obligations to Surety, including, but not limited to, those arising under this Agreement. Principal and each of the other Indemnitors explicitly confirm their joint and several liability for Bonds issued by Surety as provided in this Agreement. The Principal and each of the other Indemnitors shall remain responsible to Surety under this Agreement regardless of any changes in the relationship between or among the Principal and any of the other Indemnitors.

5

**ARGUMENTS**

Endurance states broadly that the Debtor's attempt to exempt the Property should be denied because it was done in bad faith. This is shown by DiStefano's failure to disclose, proposing an unconfirmable plan, and his "pattern of delay and obfuscation . . . ." (Endurance's Obj. Debtor's Am. Exemptions 12, ECF No. 305.) Endurance further argues that the Debtor, as a New York domiciliary, is limited by New York Debtor and Creditor Law ("NYDCL") Section 282 to the exemptions found in the CPLR Sections 5205 and 5206. Endurance's conclusion is that the only real property subject to exemption pursuant to CPLR 5206 is the Debtor's principal residence and not the Property. As an alternative, if the exemption is not prohibited, the Creditor states that (b)(3)(B)'s mention of "nonbankruptcy law" should be interpreted as referring to New York law. However, Endurance's very narrow, main point is that the Property is not exempt from process as to Endurance because of the joint liability created when the Debtor and his spouse signed the Agreement. Thus, the Creditor concludes that the second amended claimed exemption is ineffective at least as to Endurance under Hawaiian law.

The Debtor responds that New York law is irrelevant; Hawaiian law controls on the exemption applicability. The Debtor further states that pursuant to the Supreme Court's decision in *Law v. Siegel*, 571 U.S. 415 (2014), bad faith is not a factor in the rise or fall of a claimed exemption. However, the heart of the Debtor's defense is his conclusion that Endurance does not have the type of joint obligation necessary to overcome the protection offered by the Property's TBE. He asserts that the other side relies too heavily on the Agreement. He reasons that Endurance has not shown that signing the Agreement is the kind of joint action contemplated by *Sawada v. Endo*, 57 Haw. 608 (1977). Specifically, the Debtor says that because each person signed only as an "individual indemnitor", that action does not meet the

6

"joint liability" that is necessary. Also problematic, according to DiStefano, is that Endurance is not a joint creditor of only the Debtor and his spouse because of the five other co-indemnitors. A further quandary is that the Agreement does not specifically state that Endurance may pursue the Debtor and his wife as a marital couple. The Debtor also posits that Endurance is guilty of not following the *Sawada* suggestion to insist on the subjection of the Property as a condition for the issuance of the Agreement. Other complications from the Debtor's perspective include an issue raised by Laurie Todd that she is not bound by the Agreement, the Property is not even mentioned in the Agreement, and any liability flowing from it is not backed by a judgment.[7]

In response, Endurance restates its earlier positions and emphasizes the joint nature and obligation of the Agreement. It further argues that the Debtor offers no legal basis for his position regarding the Agreement and points out that regardless of Laurie Todd's liability, Section 6.7 of the Agreement binds all other indemnitors.[8]

## ISSUES

In order to rule on the objections to the Debtor's exemption, the Court must address the following legal issues:

---

[7] The Debtor raised a number of arguments in the context of his Motion to Dismiss his own case (ECF No. 353) that he then attempted to bring into the record through counsel at oral argument. Taking into consideration that this matter has been briefed several times by the parties and the Court neither requested nor ordered the filing of additional submissions regarding these matters, the Court is not considering any argument not contained within the Debtor's briefs filed in opposition to the objections to the Debtor's exemption.

[8] Section 6.7 of the Agreement provides:

> INVALIDITY - Invalidity of any provisions of this Agreement shall not render the other provisions hereof invalid. In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not affect the validity of this Agreement or the liability hereunder of the Principal and any of the other Indemnitors executing the same, but the Principal and each and every other Indemnitor so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. The Principal and each of the other Indemnitors agree to execute promptly any documentation necessary to cure any such failure, defect or invalidity. It is understood and agreed by the Principal and each of the other Indemnitors that the rights, powers, and remedies given Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which Surety may have or acquire against the Principal and each of the other Indemnitors or others, whether by the terms of any Other Agreement or by operation of law or otherwise.

7

I.  May bad faith defeat a claim to an exemption?

II. Is the NYDCL dispositive?

III. If the answer to the preceding question is in the negative, for purposes of the "applicable nonbankruptcy law" standard provided in (b)(3)(B), does the state law of domicile (New York) or situs (Hawaii) control?

IV. If Hawaiian law applies, what type of obligation would allow a creditor to defeat a TBE?

V.  Does that obligation need to have been reduced to judgment?

## DISCUSSION

*I.    BAD FAITH*

Endurance reasons that because the Debtor's enumerated acts constitute bad faith, the amended exemption on the Property should be denied. Endurance cites to a lone wolf case, *In re Woolner*, No. 13-57269, 2014 Bankr. LEXIS 5048 (Bankr. E.D. Mich. Dec. 15, 2014), to propose that the bankruptcy court has the inherent authority to deny an amended exemption premised on the bad faith of the debtor. The *Woolner* court makes many valid, appealing observations about the bankruptcy process and the need to police the system. Exemptions are obviously important for the fresh start of the honest debtor. However, they should not necessarily be considered sacrosanct in cases infected by the debtor's bad faith. This Court agrees that should be the answer. Be that as it may, the United States Supreme Court has indicated in dicta in *Law v Siegel*, that bankruptcy courts enjoy no such general equitable power. There has been much academic discussion as to the precedential validity of dicta. However, "[l]ower courts are obligated to follow Supreme Court dicta, particularly where there is not substantial reason for disregarding it, such as age or subsequent statements undermining its

8

rationale." *Ellmann v. Baker (In re Baker)*, 791 F.3d 677, 682 (6th Cir. 2015). Notwithstanding the Supreme Court's observation in *Siegel*, Endurance invites the Court to follow *Woolner's* lead and deny the amended exemption. The Court respectfully declines the invitation.[10]

## II.  IS THE NYDCL DISPOSITIVE?

Although not entirely clear, it appears that Endurance argues that the Debtor is stuck with only New York state exemptions and, therefore, the Property is not exempt.[11] Under the Bankruptcy Code ("Code"), a debtor may exempt property listed in either § 522(b)(2)[12] or (b)(3).[13] 11 U.S.C. § 522(b)(1). A debtor that chooses (b)(2) is commonly referred to as having taken the federal exemptions because that Section consists of the property listed in Section 522(d). However, as indicated in the statute, (b)(2) is not available to a debtor if applicable state law prohibits claiming these exemptions. Under such a scenario, the debtor can only exempt property in (b)(3). Endurance claims that NYDCL Section 282 prohibits the Debtor from claiming the "federal exemptions" in a bankruptcy case. In a vacuum, Endurance is right in that NYDCL 282, together with NYDCL 284,[14] made New York an "opt-out" state and prohibited a

---

[10] Additionally, as indicated at the hearing on January 9, 2019, the Court questions the existence of bad faith based on the factual underpinnings of this case.

[11] Based on the parties' briefs, it appears that there is no dispute that the Property is an asset of the estate unless the Debtor can remove it from the estate by exempting it pursuant to (b)(3)(B).

[12] Section (b)(2) states, "Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize."

[13] Section (b)(3) provides in relevant part:
  Property listed in this paragraph is
    (A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place;
    (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law; and . . . .

[14] NYDCL 284 provides, "In accordance with the provisions of section five hundred twenty-two (b) of title eleven of the United States Code, debtors domiciled in this state are not authorized to exempt from the estate property that is

debtor from claiming property exempt pursuant to the federal exemptions in § 522(b)(2). *In re Martiny*, 378 B.R. 52, 53 (Bankr. W.D.N.Y. 2007) (holding that through NYDCL 284 the "State of New York has exercised the option to prohibit use of the exemptions listed in 11 U.S.C. § 522(d).").

However, Endurance's position that Section 282 prevents the Debtor from exempting the Property under (b)(3)(B) is fundamentally flawed for two reasons. First, New York's prohibitions against taking (b)(2) federal exemptions were effectively written out of the statute by NYDCL 285[15] in 2011. The amendment to the NYDCL turned New York into an "opt-in" state such that a debtor could claim exemptions under either (b)(2) or (b)(3). *See In re Castellano*, 550 B.R. 214, 216 (Bankr. E.D.N.Y. 2016). Second, and more importantly, debtors in New York could always exempt property using all of (b)(3)'s subsections because the old law only prohibited exempting property using (b)(2). *See, e.g.*, *In re Martiny*, 378 B.R. at 53; *In re Cochrane*, 178 B.R. 1011, 1019–20 (Bankr. D. Minn. 1995) ("The use of the conjunction 'and' between the two subdivisions of § 522(b)(2) shows that Congress intended to allow debtors to cumulate the protections that might be available under the two different sources described in them.").[16] In effect, the Code allows for the possibility of a TBE "wild card" exemption over and above state law exemptions claimed under (b)(3)(A). Endurance does not offer, and the Court is unaware of, any provision in New York or federal law that would prohibit the additional

---

specified under subsection (d) of such section." For clarity, the Court notes that the property "specified under subsection (d)" is only available to a debtor through Section 522(b)(2).

[15] NYDCL 285 states, "Notwithstanding any inconsistent provision of law, an individual debtor may opt to exempt from property of the estate such property as is permitted to be exempted pursuant to section five hundred twenty-two of title eleven of the United States Code in lieu of such property as is permitted to be exempted pursuant to the applicable provisions of this article."

[16] Section 522(b)(3) was formerly known as § 522(b)(2) and only had two subsections until the statute was amended in 2005. Further quotations from *In re Cochrane* regarding § 522(b)(2) should be read as referring to § 522(b)(3).

10

utilization of (b)(3)(B) when electing (b)(3)(A). Thus, Endurance's arguments are without merit and the Property is exempt if the Debtor can find safe harbor within (b)(3)(B).

### III. DOMICILE VERSUS SITUS

Since the Court found that the Debtor may claim (b)(3)(B) while also claiming (b)(3)(A) New York exemptions, Endurance's fallback position is that New York law, not Hawaiian law, should be read as (b)(3)(B)'s "applicable nonbankruptcy law" and is largely driven by the case of *In re Stockburger*, 192 B.R. 908 (E.D. Tenn. 1996), *aff'd*, No. 96-5409, 1997 U.S. App. LEXIS 2034 (6th Cir. Jan. 31, 1997). However, Endurance's reliance on *Stockburger* is misplaced because the debtors in that case did not claim a TBE exemption under (b)(3)(B). Instead, the debtors claimed the proceeds of certain personalty to be exempt pursuant to (b)(3)(A) (formerly known as (b)(2)(A)) which specifically provides that domicile determines the applicable nonbankruptcy law. When taken out of context, *Stockburger* appears to make broad statements about the entirety of (b)(3) but, based on the issue presented, that decision was clearly limited solely to (b)(3)(A). With all due respect, this Court declines to import *Stockburger*'s ruling regarding (b)(3)(A)'s domicile provision to this separate and distinct choice of law issue concerning the Debtor's (b)(3)(B) TBE exemption. One simply has nothing to do with the other.

Endurance concedes that "other courts have held that the law of the state of the location of the entireties property determines whether the property is exempt . . . ." (Endurance's Obj. Debtor's Am. Exemptions 13, ECF No. 305.) For example, in a case from Pennsylvania, the Third Circuit ruled, "Since property law in general and the law of co-tenancies in particular are creatures of state law, the 'applicable nonbankruptcy law' is the applicable Pennsylvania law of tenancy by the entirety." *Napotnik v. Equibank & Parkvale Sav. Ass'n*, 679 F.2d 316, 318 (3d Cir. 1982); *see also In re Jaffe*, No. 18-2726, 2019 U.S. App. LEXIS 23287, at *9 (7th Cir. Aug.

11

5, 2019) (Same for Illinois); *Sumy v. Schlossberg*, 777 F.2d 921, 927 (4th Cir. 1985) (Same for Maryland). Additionally, in *In re Cochrane*, 178 B.R. 1011 (Bankr. D. Minn. 1995), Judge Kishel ruled that "the situs of the asset that is held by a debtor in bankruptcy as a tenant by the entireties is the sole determinant of whether § 522(b)(2)(B) can protect it from claims of the bankruptcy estate." *Id.* at 1020. In the face of this case law, Endurance still offers "that finding the law of the state of New York as determining the exemptions is more sound." (Endurance's Obj. Debtor's Am. Exemptions 13, ECF No. 305.) However, the only analysis and logic offered for that conclusion is because the Property would not be exempt under New York law.

Moreover, secondary sources overwhelmingly conclude that the law of the situs controls. 4 COLLIER ON BANKRUPTCY ¶ 522.10(3) (Richard Levin & Henry J. Sommer eds., 16th ed.) ("The debtor's entitlement to a claim of exemption under section 522(b)(3)(B) is determined by the law of the state where the entireties property is located and not by the exemption law of the domiciliary state under section 522(b)(3)(A)."); Robert C. Lawrence, III & Elisa Shevlin Rizzo, *Basic Conflicts of Laws Principles*, *in* INTERNATIONAL ESTATE PLANNING 4, 6 (2d ed. 2013) ("The traditional ordering process for determining choice of law issues in common law jurisdictions is that the law of the jurisdiction of domicile governs the disposition of personal property . . . and the law of the situs governs the disposition of real property . . . . The situs rule is based upon the rationale that the situs jurisdiction has the greatest interest in controlling the administration of property located within its borders."). The Court agrees with the above reasoning and thus concludes that the law of the situs, Hawaii, is the "applicable nonbankruptcy law" that controls.

IV.    *DEFEATING A TBE*

There is no dispute that, pursuant to (b)(3)(B), the Debtor had an interest in the Property as a TBE immediately before the commencement of this case. The seminal questions are whether that interest is exempt from process pursuant to Hawaiian law and if not, what type of obligation would pierce the envelope of protection provided by the TBE? The final issue that must be addressed is whether a judgment is required to close the loop.

Both sides cite to *Sawada v. Endo* as controlling law. There, Masako Sawada and Helen Sawada were injured when they were struck by a car driven by Kokichi Endo. Both were awarded judgments against Endo. During the litigation, Endo and his wife conveyed real property, owned by them as tenants by the entirety,[17] to their sons. The Sawadas sued to set aside the transfer. The trial court denied the request. The Supreme Court of Hawaii held, in affirming the refusal to overturn the conveyance, that a TBE "is not subject to the claims of the creditors of one of the spouses during their joint lives . . . ." *Id.* at 617. The decision recognized that one of the principal purposes behind a TBE is to provide "a broad immunity from claims of separate creditors . . . ." *Id.* (citation omitted). The court further held that, "Neither husband nor wife has a separate divisible interest in the property held by the entirety that can be conveyed or reached by execution." *Id.* at 614. The Hawaii Supreme Court analyzed various theories regarding a TBE, based on a 1951 scholarly article,[18] that divided the possible avenues into four

---

[17] Haw. Rev. Stat. § 509-2(a) explicitly permits the creation of TBEs in Hawaii and provides in relevant part:
> Land, or any interest therein, or any other type of property or property rights or interests or interest therein, may be conveyed by a person to oneself and another or others . . . as tenants by the entirety, or by . . . tenants by the entirety to themselves or themselves and another . . . or by one tenant by the entirety to the tenant's spouse or reciprocal beneficiary of all of the tenant's interest or interests, without the necessity of conveying through a third party, and each such instrument shall be construed as validly creating a . . . tenancy by the entirety . . . or single ownership, as the case may be, if the tenor of the instrument manifestly indicates such intention.

It is important to note that it is common law that controls the nature and limitations of TBEs in Hawaii.

[18] Oval A. Phipps, *Tenancy by the Entireties*, 25 TEMPLE L.Q. 24 (1951).

camps. The appellate court aligned Hawaii with the jurisdictions in the so-called Group III which held "an attempted conveyance by either spouse is wholly void, and the estate may not be subjected to the separate debts of one spouse only." *Id.* at 12 (citations omitted). At that time, the court concluded the jurisdictions in that group were Delaware, District of Columbia, Florida, Indiana, Maryland, Missouri, Pennsylvania, Rhode Island, Vermont, Virginia, and Wyoming. *Id.* at 612. The court stated "we are placing our stamp of approval upon what is apparently the prevailing view of the lower courts of this jurisdiction." *Id.*

The Second Circuit has not ruled on an interpretation of the phrase "exempt from process." However, the Fourth Circuit has stated that "exempt from process" means "immune from process." *Napotnik*, 679 F.2d at 319. It is clear from *Sawada* that the Property is immune from any process of a creditor of one of the spouses. With only one spouse's liability, the Property would be protected. Nonetheless, a TBE is not immune if there has been "joint action of the spouses . . . ." *Sawada*, 57 Haw. at 614. However, the parties disagree what sort of joint action would be required to allow a creditor to issue process. In the case of *In re Monzon*, 214 B.R. 38 (Bankr. S.D. Fla. 1997), as in the Debtor's case, the husband filed a petition while his wife remained a nondebtor. They had $378 of joint credit card debt. The debtor claimed TBE property as exempt; the trustee objected. The court sustained the objection to the exemption based on the joint credit card obligation alone. That liability was all the "joint action" needed to attack the TBE. The court in that case gave the debtor the option of independently providing the $378. If not, the TBE property would be subject to administration. In a similar situation, an unsecured, joint federal tax debt of $2,095.00 was sufficient to defeat a TBE to the extent of the joint debt. *In re Sefren*, 41 B.R. 747, 749 (Bankr. D. Md. 1984).

14

Here, the Debtor concedes that a mortgage on the Property signed by both spouses would constitute the required joint action. (Debtor's Suppl. Opp'n 8, ECF No. 338.) The Debtor also hints that a judgment entered in favor of Endurance against the Debtor's spouse would be, at the very least, the beginning of the necessary joint action. *Id.* at 9. Endurance maintains that the execution of the Agreement by both spouses is sufficient in and of itself. (Reply Br. 2, ECF No. 347.)

The Court agrees with Endurance. The Debtor's collateral attacks on the Agreement vis-à-vis the meaning of "joint action", while creative, lack any authority in law. The Debtor places numerous asterisks and casts many aspersions on the interpretation and significance of the Agreement and the repercussions of its execution by the Debtor and his spouse. In effect, the Debtor attempts to require much more than the mere joint action mentioned in *Sawada*. The Debtor offers no case law, points to no prerequisite in the statute, and references no ruling in *Sawada* for the requirement that any TBE property be specifically referenced in the Agreement or that it contain a caveat that the Property is potentially subject to risk. This was a business arrangement common to the construction industry and not a consumer transaction. With his background in the industry, the Debtor knew or should have known the personal ramifications and consequences of signing of the Agreement. While the *Sawada* decision mentions the subjection of TBE property as a possible condition imposed by a creditor, that was a mere suggestion and not a necessity or requirement. Similarly, the theory that Endurance's objection should be overruled because there are indemnitors other than the Debtor and his spouse is not persuasive. It is a mere hypothesis with no authority or backdrop offered. Also, the Debtor points to no precedent requiring spouses to sign as a marital entity of some sort to reach TBE property.

A TBE is entitled to special protections but it is not an impenetrable fortress. Debtor's caveats regarding the indemnification process find no support in Hawaiian law and no support in the other Group III jurisdictions. *Sawada* points only to the need for "joint action." A TBE protects the interests of the innocent half of a marital union from the unilateral bad dealings, bad judgment, and/or bad luck of the other spouse. It should operate as a shield, not a sword. Here, the Debtor and his spouse executed the same Agreement with the same joint and several liability. (Joint Stip ¶ 16–17.) To this Court, that accountability satisfies *Sawada*'s joint action requirement and hypothetically allows Endurance to issue process[19] and enter the Property's TBE envelope of protection dependent on the judgment issue that follows.

V.    IS A JUDGMENT NECESSARY?

The final crucial question is whether the necessity of *Sawada's* joint action requires a judgment. While most courts agree that joint creditors with a judgment may reach TBEs, courts are split over whether joint creditors *without* judgments defeat the TBE exemption. The Debtor argues that Endurance must have obtained a judgment prepetition to be the kind of joint creditor that defeats the exemption. While the Debtor does not cite specific cases in support, several courts have found that a TBE remains exempt from process unless the joint creditor secures a judgment prepetition. *See Grant v. Himmelstein (In re Himmelstein)*, 203 B.R. 1009, 1013 (Bankr. M.D. Fla. 1996) (holding that "an actual in personam judgment is a prerequisite for a trustee's power [to administer a TBE]"); *In re Anderson*, 132 B.R. 657, 661 (Bankr. M.D. Fla. 1991) (ruling that a joint creditor must show there was a judgment at the time of filing). These courts conclude that a TBE is "exempt from process" unless a creditor in the case could force a

---

[19] In fact, notwithstanding that Endurance has not obtained a judgment against both spouses to the TBE, Endurance obtained several orders from New York State Supreme Court that, at least for a several month period operated "as a lien, mortgage or other encumbrance on the assets of each Defendant . . . ." (ECF No. 277, Ex. C.) The Debtor and his spouse consented to three extensions of this order to show cause. (*Id.*, Exs. D, E, and G).

16

sale of the TBE at the filing of the bankruptcy petition. *See generally Anderson*, 132 B.R. at 661.

However, Judge Mark, in the *Monzon* case, disagreed with the result in *Himmelstein*. He stated that he "adopts the majority view that a joint creditor need not hold an actual judgment as a prerequisite to administration by a trustee." *Monzon*, 214 B.R. at 42. The court further said:

> That view was articulated well in *Sumy v. Schlossberg*, 777 F.2d 921, 928 n. 14 (4th Cir. 1985):
>> [T]he absence of a judgment or lien has no bearing on the hypothetical issue of whether the debtor's interest would be exempt from process under state law, so the [entireties] property cannot be exempted and remains part of the estate to the extent of joint claims regardless of the joint creditors' actual possession of a judgment or lien under state law.

*Id.*

Other courts have agreed that a judgment is not necessary. *See In re Planas*, 199 B.R. 211, 217 (Bankr. S.D. Fla. 1996) (holding that "it is not necessary that the joint creditor have a writ of execution or a final judgment, or even a default on the debt. It is only necessary that the creditor be entitled to levy as one of the package of rights which belong to the joint creditor."); *In re Helm*, No. 11-18801, 2012 Bankr. LEXIS 2048, at *6 (Bankr. S.D. Fla. May 9, 2012) ("In order for the entireties exemption to be defeated, the joint debt need not be reduced to judgment prior to the petition date.") (citing *Monzon*, 214 B.R. at 42); *In re Houck*, 184 B.R. 21, 23 (Bankr. E.D. Pa. 1995) (stating that "we conclude that the Third Circuit's holding in *Napotnik* was not intended to apply only to lienholders, but instead, was intended to apply equally to a creditor who holds an unsecured claim against both spouses based upon a joint debt"); *In re Boyd*, 121 B.R. 622, 624 (Bankr. N.D. Fla. 1989) ("Where there were joint creditors of both spouses who . . . could have levied on properties held by the Debtor and non-debtor spouse as

17

tenants by the entireties, the trustee was entitled to liquidate the debtor's interests in the properties.").

Without authority, the Debtor argues that the presence of a judgment is necessary to reach a Hawaiian TBE; the Court disagrees and relies on the reasoning of the above cases. Specifically, neither the plain language of the statute nor the *Sawada* decision require a judgment. *Sawada* immunizes a TBE against individual creditors of one spouse but not where there has been "joint action." This Property would be immune if the creditor body only consisted of creditors of just the Debtor. However, this Property is not immune from process because the joint action of the Debtor and his spouse makes Endurance the kind of joint creditor that could, at some point, reach the TBE. Whether or not Endurance has a judgment has no impact on the TBE's immunity because the joint action shattered the immunity long ago.

To read the statute any other way would be inconsistent with the Code and would encourage only one spouse to a TBE to file a bankruptcy case to accomplish what other courts have called "legal fraud." *Sumy*, 777 F.2d at 925, 929. Under such a scheme, if only one spouse to a TBE files a bankruptcy case before a joint creditor obtains a judgment, the TBE would be exempt. Additionally, if the debtor receives a discharge, that "would prevent the joint creditor from ever obtaining a joint judgment" against both tenants to the TBE. *Monzon*, 214 B.R. at 43; *Sumy*, 777 F.2d at 925, 929. The *Sumy* court discussed this "legal fraud" at length and explained that requiring a judgment may allow a debtor to permanently exempt the TBE from prepetition joint creditors that, but for the bankruptcy, would have been able to reach the TBE in state court. *Sumy*, 777 F.2d at 925, 929. This Court agrees that such a result is counter to the purpose of exemptions to serve as shields, not swords, and further bolsters the conclusion that a judgment is not necessary to render a TBE not exempt from process.

18

Additionally, requiring a prepetition judgment places undue significance on a lien that can be avoided if the TBE is also a homestead and the mathematical formula of Section 522(f) is met. *See* 11 U.S.C. § 522(f)(1)(A); *Sumy*, 777 F.2d at 930. Moreover, Hawaii, like many states, has prejudgment provisional remedies through which joint creditors could restrain TBE property long before obtaining a judgment.[20] *See Monzon*, 214 B.R. at 42. Finally, as mentioned previously, Endurance obtained an order from New York Supreme Court that "operate[d] as a lien, mortgage, or other encumbrance on the assets of each Defendant . . . ." (ECF No. 277, Ex. G.) As such, there is little, if any, logic or additional protection for the TBE behind requiring a judgment as a partial price of admission.

## CONCLUSION

The only remaining matter before the Court is Endurance's objection to the second amended claim of exemption for the Property under (b)(3)(B). The objection is sustained to the extent of at least Endurance's claim. Other issues relating to the possible administration of the Property must await another hearing on another day.

It is SO ORDERED.

Dated: September 30, 2019               /s/ Robert E. Littlefield, Jr.
       Albany, New York                 Robert E. Littlefield, Jr.
                                        United States Bankruptcy Judge

---

[20] Haw. Rev. Stat. § 651-2 provides in relevant part:
> The plaintiff, in any action upon a contract, express or implied, at the time of commencing the action, or at any time afterward before judgment, may have the property of the defendant, or that of any one or more of several defendants, which is not exempt from execution, attached in the manner hereinafter prescribed, as security for the satisfaction of any judgment that the plaintiff may recover[.]