UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

In re: Stanley Lawrence DiStefano, Jr.,              Case No. 16-10694
                                                     Chapter 7


                                    Debtor.

------------------------------------------------------------
APPEARANCES:

Marc Ehrlich, Esq.
*Chapter 7 Trustee*
64 Second Street
Troy, New York 12180

Alexandra Edelman, Esq.
Primmer, Piper, Eggleston & Cramer, PC
*Attorneys for Chapter 7 Trustee*
30 Main Street, P.O. Box 1489
Burlington, Vermont 05402

Paul A. Levine, Esq.
Meghan M. Breen, Esq.
Lemery Greisler, LLC
*Attorneys for the Debtor*
677 Broadway, 8th Floor
Albany, New York 12207

Michael L. Boyle, Esq.
Boyle Legal, LLC
*Attorney for Christi Lynn DiStefano*
64 Second Street
Troy, New York 12180

Adam R. Schwartz, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP *Attorneys for
Endurance American Insurance Company* 1300 Mount Kemble
Avenue
P.O. Box 2075
Morristown, New Jersey 07962


Hon. Robert E. Littlefield, Jr., United States Bankruptcy Judge

**MEMORANDUM-DECISION**

Currently before the Court is a "Motion for an Order, Pursuant to Bankruptcy Rule 9019(a) and 11 U.S.C. § 105,[1] to Approve a Settlement of [an] Adversary Proceeding" ("9019 Motion" or "Proposed Settlement") made by Marc S. Ehrlich, Esq., the Chapter 7 Trustee ("Plaintiff" or "Trustee Ehrlich"). (ECF No. 469).[2] Endurance American Insurance Company ("Endurance" or "Creditor") opposes the Proposed Settlement. (ECF No. 491). The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b). For the following reasons, the 9019 Motion is denied without prejudice.

**BACKGROUND**

On April 20, 2016, an involuntary Chapter 7 petition was filed against Stanley Lawrence DiStefano, Jr. ("Debtor" or "Stanley"). (ECF No. 1). On June 9, 2017, on the Debtor's consent, this Court entered an "Order for Relief" adjudicating the case as a Chapter 7. (ECF Nos. 66 & 67). On June 12, 2017, the Debtor filed a "Motion for Order Converting Case to One Under Chapter 11 of the United States Bankruptcy Code," which this Court granted on July 6, 2017. (ECF Nos. 68 & 88). On July 2, 2019, on the motion of the United States Trustee, the case was reconverted to a Chapter 7 proceeding and Douglas J. Wolinsky, Esq. ("Trustee Wolinsky") was appointed Chapter 7 Trustee. (ECF Nos. 369, 380 & 381).

On July 10, 2020, Trustee Wolinsky commenced an adversary proceeding (Case No. 20-90016, the "AP") against the Debtor and his non-debtor spouse, Christi Lynn DiStefano ("Christi") (collectively the "Defendants" or "DiStefanos"). (Adv. P. No. 1). The AP has two (2) causes of action. *Id.* The first seeks approval to sell, pursuant to § 363(h), real property located at

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2022) (the "Bankruptcy Code").

[2] All citations to the main case will be referenced as "ECF No." and all citations to the adversary proceeding will be referenced as "Adv. P. No."

68-1050 Mauna Lani Point Drive, Kamuela, Hawaii (the "Hawaii Property"). *Id*. The second

requests an accounting of any and all rental income received from the Hawaii Property since April

20, 2016. *Id*. "In the event the Defendants do not provide an accounting of rental income . . . the

Trustee respectfully requests that he be permitted to hold all funds from the sale of the Hawaii

Property in escrow and only distribute the funds after he receives Defendants' accounting of their

rental income." (Adv. P. No. 1-2 at ¶ 45). On January 27, 2021, Trustee Ehrlich was appointed

successor Chapter 7 Trustee in the main case and on March 9, 2021, was substituted in for Trustee

Wolinsky as plaintiff in the AP. (ECF No. 450; Adv P. No. 47).

On December 20, 2017, Endurance filed a proof of claim in the total amount of

$1,769,317.00, contending $859,474.09 is secured by the Debtor's interest in the Hawaii Property

and the remaining $909,843.00[3] is unsecured. (Claim No. 13-1).

On November 12, 2021, this Court found material questions of fact existing regarding §

363(h)(3)'s benefit/detriment test, discussed *infra*, and denied "Plaintiff's Motion for Summary

Judgment." (Adv. P. Nos. 57 & 81). Subsequently, Trustee Ehrlich filed the 9019 Motion seeking

to settle the AP. (ECF No. 469). In sum and substance, Plaintiff is seeking approval to withdraw

the AP in exchange for $132,500.00 from the Defendants, with the funds to be tendered within 90

days of court approval. *Id.* Pursuant to the Proposed Settlement, the DiStefanos would retain

ownership of the Hawaii Property subject to all existing liens[4] and encumbrances. *Id.* The 9019

Motion specifically encompasses all claims Trustee Ehrlich has against the Defendants, including

---

[3] The Court notes Endurance's proof of claim rounds the unsecured amount up to the nearest whole dollar. The exact remaining unsecured amount is $909,842.91 (total claim less secured portion).

[4] This includes Endurance's Lien.

the estate's interest in the Hawaii Property and any claim for rents received from July 2, 2019, to

the present.[5] *Id.*

Adding to the complexity of the matter, Endurance indicates on March 2, 2022, it made an

offer ("Endurance Offer") to financially compensate the estate for Trustee Ehrlich to litigate the

AP.[6] (ECF No. 491 at ¶ 44). The Endurance Offer is made contingent on the following

nonfinancial provisos: "1) the Trustee not entering into a settlement or sale agreement without the

consent of Endurance and 2) on Endurance being consulted on the litigation and filings with a

reasonable opportunity to provide input." *Id.* The Court assumes that Trustee Ehrlich, because of

the Proposed Settlement *sub judice*, is not interested in the Endurance Offer. In any event, the

Endurance Offer has not been noticed for court approval.

Perhaps the most important, practical piece of this puzzle is Trustee Ehrlich has no funds

in the estate with which to operate. (ECF No. 498, Hrg. at 55:45). At this point, the administrative

expenses are mounting. (ECF Nos. 469 at ¶ 29 & 490 at ¶ 15).

### ARGUMENTS

Both Plaintiff and Creditor cite to *Motorola, Inc. v. Official Comm. Of Unsecured*

*Creditors (In re Iridium Operating LLC)*, 478 F.3d 452 (2d Cir. 2007), as governing this matter.

(ECF Nos. 469 at ¶ 20 & 491 at ¶ 46). However, both Trustee Ehrlich and Endurance argue the

seven factors ("*Iridium* Factors") enunciated by the Second Circuit Court of Appeals in *Iridium*

support their opposing positions. *Id.*

---

[5] It must be noted the 9019 Motion implicates rents collected only after the case reconverted to Chapter 7 (July 2, 2019) whereas the AP seeks same from the date the involuntary proceeding was commenced (April 20, 2016). (ECF Nos. 1 & 380). No explanation of the differing dates has been offered and no legal theory has been advanced as to what date should be utilized.

[6] The Endurance Offer specifically provides for "[r]easonable professional fees and costs going forward up to $100,000 upon proper application to the Court to fund litigation to prosecute Adversary Proceeding No. 20-90016-1-rel . . . even if the litigation is unsuccessful. (ECF No. 491 at ¶ 44). However, the Offer does not address the substantial administrative expenses already accumulated.

Trustee Ehrlich asserts the § 363(h) action will be vigorously defended by the DiStefanos. (ECF No. 469 at ¶ 25). Plaintiff indicates that after his request for summary judgment was denied, he re-evaluated his earlier position and is "no longer certain that he will prevail if this matter is fully litigated." *Id.* at ¶¶ 26 & 27. Plaintiff further posits, based upon the litigation history in this matter, any decision issued by the Court will likely be appealed, burdening the estate with the attendant appellate costs and delaying resolution. *Id.* at ¶ 34.

Trustee Ehrlich represents that litigation, even if successful, would financially exhaust the estate of any recovery gained. *Id.* at ¶ 29. He estimates, through March 2022, the bill for legal services on his behalf exceeds $100,000.00. (ECF No. 500 at ¶ 43). Additionally, Plaintiff points out that Endurance is not prejudiced by the Proposed Settlement because its lien on the Hawaii Property will not be affected. (ECF No. 469 at ¶ 41). Therefore, based upon his business judgment, Trustee Ehrlich argues the Proposed Settlement is in the best interests of the estate. *Id.* at ¶ 52.

With respect to the second cause of action, Trustee Ehrlich states, "[I]ncluding an analysis of the potential turnover of collected rent is futile as none was collected in 2020 and 2021, and for the last calendar year that rent was collected, the rent received was less than the annual secured payments incurred for that year to County of Hawaii and to the Homeowners Association." (ECF No. 500 at ¶ 24). Plaintiff further asserts, "The amount of rental income the Defendants received is speculative and a Trustee in upstate New York during a pandemic cannot realistically supervise tenant relations nearly 5,000 miles away in Hawaii when there are no funds in deposit in the Bankruptcy Estate." (ECF No. 490 at ¶ 18).

Endurance argues that Trustee Ehrlich's analysis is insufficient to support the Proposed Settlement. (ECF No. 491). Creditor states, "To justify the settlement the Trustee does not appear to rely on facts he has developed but rather on the self-interested representations of the Debtor

and Christi." *Id.* at 2. However, Endurance expresses the real problem with approving the 9019

Motion is "the Debtor and Christi will walk away from the bankruptcy with a multimillion dollar

Hawaiian beach home[7] . . . without any distribution to the Debtor's creditors . . . ." *Id.* at 3.

On the rent issue, Endurance indicates there is at least $165,000.00 in unaccounted rental

receipts, one-half of which is property of the estate. (ECF No. 496 at ¶¶ 6, 8). Endurance further

argues that Plaintiff's position is not reasonable as "[t]he proposed settlement of $132,500 appears

to be less than what the estate would be entitled to receive if it were to pursue a (a relatively

straightforward) turnover action as to the estate's portion of the rents alone."[8] (ECF No. 491 at ¶

52).

## DISCUSSION

### I.   Federal Rule of Bankruptcy Procedure 9019 Standard.

When reviewing a settlement motion, this Court is guided by basic principles. First,

"[s]ettlements and compromises are favored in bankruptcy as they minimize costly litigation and

further parties' interests in expediting the administration of the bankruptcy estate." *In re Dewey &*

*LeBoeuf LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012) (citations omitted). It has been

explained:

> A court must determine that a settlement under Bankruptcy Rule 9019 is fair,
> equitable, and in the best interests of the estate before approving it. In so doing, the
> Court need not decide the numerous issues of law and fact raised by a compromise
> or settlement, "but must only 'canvass the issues and see whether the settlement falls
> below the lowest range of reasonableness.'" Rather than "conduct[ing] a 'mini-
> trial,'" the Court only needs to "be apprised of those facts that are necessary to enable
> it to evaluate the settlement and to make a considered and independent judgment."
> *In re Residential Cap., LLC*, 497 B.R. 720, 749 (Bankr. S.D.N.Y. 2013) (internal citations
> omitted).

---

[7] The picture painted by Endurance of the Defendants walking away with a multimillion property is misleading. As
previously noted, the property is being transferred subject to all liens and encumbrances.

[8] Endurance seemingly fails to consider the estate would only have a one-half interest in net rents collected.

While this Court considers the objections of all parties in interest, those objections are not controlling. *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006). Additionally, "[i]n determining whether to approve the trustee's application to settle a controversy, the bankruptcy court does not substitute its judgment for that of the trustee." *Depo v. Chase Lincoln First Bank, N.A.*, 77 B.R. 381, 384 (N.D.N.Y. 1987) (citation omitted). Rather, "[i]f the Trustee chooses one of two reasonable choices, [the Court] must approve that choice, even if, all things being equal, [the Court] would have selected the other." *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998).

While Trustee Ehrlich's business judgment is given certain deference, this Court has the obligation to review the Proposed Settlement to determine "whether it 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 613 (2d Cir. 1983) (citation omitted). In determining whether a settlement is fair and reasonable, courts analyze the following seven *Iridium* Factors:

(1) [T]he balance between the litigation's possibility of success and the settlement's future benefits;
(2) [T]he likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;
(3) "[T]he paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";
(4) [W]hether other parties in interest support the settlement;
(5) [T]he "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;
(6) "[T]he nature and breadth of releases to be obtained by officers and directors"; and
(7) "[T]he extent to which the settlement is the product of arm's length bargaining."

*In re Allard*, No. 18-14092, 2021 Bankr. LEXIS 1634, at *18-19 (Bankr. S.D.N.Y. June 21, 2021) (quoting *Iridium Operating LLC*, 478 F.3d at 462).

7

**II.     The First Cause of Action - § 363(h) Sale of the Hawaii Property.**

§ 363(h) permits the sale of "both the estate's interest . . . and the interest of any co-owner

in property in which the debtor had, at the time of the commencement of the case, an undivided

interest as . . . [a] tenant by the entirety" only if all four of its prongs are met.[9] 11 U.S.C. § 363(h).

The Court agrees with Endurance, under these facts, "[t]he key analysis under [s]ection 363(h) is

the third prong of the standard regarding whether the benefit to the estate of a sale of the whole

property outweighs the detriment to the co-owner." (ECF No. 491 at ¶ 58). The first two required

prongs of § 363(h) are met as courts reason when a single-family residence is to be sold,

partitioning is impracticable and any sale of a divided interest would deter potential purchasers. *In

re Addario*, 53 B.R. 335, 338 (Bankr. D. Mass 1985) (citation omitted) ("Where property is a

single family residence, there is no practicable manner of partition other than a sale and division

of the proceeds."); 3 COLLIER ON BANKRUPTCY ¶ 363.08[4][b], 363-74 (16th ed. 2022) ("Courts

recognize that the co-owner's continued residence at the property will chill any interest in

purchasing the debtor's interest alone."); *See*, e.g., *In re Griffin*, 123 B.R. 933, 935 (Bankr. S.D.

Fla. 1991) (taking judicial notice that a sale of a debtor's interest would realize less than a sale of

the whole). Additionally, as there is no indication the Hawaii Property produces, transmits or

distributes gas or electric energy for the purpose of sale, § 363(h)'s fourth required prong is not in

contention. Therefore, any trial scheduled will focus on § 363(h)(3)'s benefit/detriment test,

necessitating an extensive factual hearing.

---

[9] The four required prongs of § 363(h) are: (1) partition in kind is impracticable; (2) sale of estate's undivided interest
would realize significantly less for the estate than sale of such property free of the interests of co-owner(s); (3) benefit
to estate outweighs detriment to co-owner(s); and (4) such property is not used in the production, transmission or
distribution, for sale, of electric energy or gas. 11 U.S.C. § 363(h)(1)-(4).

A. ***Iridium* Factors 1 & 2: The Balance Between the Litigation's Possibility of Success and the Settlement's Future Benefits & The Likelihood of Complex and Protracted Litigation, with its Attendant Expense, Inconvenience and Delay, Including the Difficulty in Collecting on the Judgment.**

Plaintiff indicates there is no assurance he will prevail on the § 363(h) cause of action because to be successful, he has to convince this Court "the 'benefit to the estate . . . outweighs the detriment, if any, to such co-owners.'" (ECF No. 469 at ¶ 27) (quoting *O'Connell v. Prakope (In re Prakope)*, 317 B.R. 593, 602 (Bankr. E.D.N.Y. 2004)); 11 U.S.C. § 363(h)(3). "In [the Second Circuit], courts consider both economic and non-economic factors in determining the detriment to the non-debtor spouse." *Prakope*, 317 B.R. at 602 (citing *Persky v. Cmty. Nat'l Bank and Tr. Co. of New York (In re Persky)*, 893 F.2d 15, 21 (2d Cir. 1989)).

In the present case, the benefits to the estate include the conclusion of the AP without additional costs, expenses or delay and the Proposed Settlement provides a definite date of resolution; the settlement amount will be received within 90 days of court approval. This is in contrast to the unknown length of time needed for complex litigation if the 9019 Motion is denied. Accordingly, the Proposed Settlement furthers the goal of final, fair and expedient resolution of the controversy. *See In re Dewey*, 478 B.R. at 640 (Bankr. S.D.N.Y. 2012).

On the other hand, the detriment to Christi is less obvious and its determination would require a full evidentiary hearing, incurring substantial additional costs for the estate. Further, the potential litigation is complicated by the Defendants argument that the issuance of Stanley's discharge robs Plaintiff of the necessary standing to prosecute the AP. (Adv. P. Nos. 21 & 29). If the matter continues, significant legal and factual issues will have to be addressed, all in the shadow of the estate's current insolvency.

An analysis of a § 363(h) sale of the Hawaii Property to a bona fide purchaser reveals the potential benefit provided by Trustee Ehrlich's victory is not worth the risk of defeat. If Plaintiff

succeeds in the AP, assuming a sale price of $2,000,000.00,[10] the best result the estate could

expect to receive is $232,411.15, based upon the Court's following analysis:

| | |
|---|---|
| Sale Price | $2,000,000.00 |
| less real estate commission (6%) | $120,000.00 |
| less real property taxes | $214,643.77 |
| less incidental prorations, credits, expenses of sale including the Trustee's closing counsel fees[11] | $25,000.00 |
| less capital gain taxes[12] | $316,059.84 |
| less Endurance's lien[13] | $859,474.09 |
| Net proceeds from sale[14] | $464,822.30 |
| less Christi's one-half interest | $232,411.15 |
| **Net distribution to the estate** | **$232,411.15** |

The settlement amount before the Court of $132,500.00 is 57% of the potential amount that could

be obtained through successful litigation of the first cause of action. Since there will undoubtedly

be complex, protracted and expensive litigation, with related appeals and Trustee Ehrlich may

recover nothing for the estate, the Court finds the first and second *Iridium* Factors favor settling

the first cause of action.

---

[10] It is unclear what the Hawaii Property listing price would be. As Trustee Ehrlich utilizes a two (2) million-dollar figure, the Court will conduct its analysis using that amount.

[11] These incidental cost approximations are taken from Trustee Ehrlich's analysis. (ECF No. 500-7, Exhibit Spreadsheets).

[12] ECF No. 500 at ¶ 63.

[13] "[W]hen the property is subject to a lien to secure a joint claim, the distribution to the co-owner is net after satisfaction of the lien." 3 COLLIER ON BANKRUPTCY ¶ 363-08[6][a], 363-80 (16th ed. 2022) (citing *Thomas v. United States* (*In re Doncheff*), 258 B.R. 177 (Bankr. E.D. Ark. 2001)).

[14] The distribution to the estate and Christi will be further reduced by any property expenses that accrue and remain unpaid, i.e., real property taxes, interest on same, future homeowner's association fees, etc.

**B. *Iridium* Factor 3: The Paramount Interests of the Creditors, Including Each Affected Class's Relative Benefits and the Degree to Which Creditors Either Do Not Object to or Affirmatively Support the Proposed Settlement.**

Plaintiff points out that Endurance is the only creditor to reap any benefit if the matter is fully litigated. (ECF No. 469 at ¶ 39). He further notes, the Creditor will not be negatively affected by the Court approving the 9019 Motion because its lien on the Hawaii Property is not being challenged and will be transferred subject to Endurance's filed lien. *Id*. at ¶ 41.

In disagreement, Endurance contends that if the matter is litigated the "creditors will be no worse off than they are with the settlement." (ECF No. 491 at ¶ 78). Yet, the third *Iridium* Factor is an inquiry on any affected class's relative benefits, not detriments. With the administrative claims rising, it is unlikely that a distribution to unsecured creditors will be realized. Even if the funds do reach that class, Endurance would receive the lion's share. In effect, Trustee Ehrlich would be embroiled in onerous litigation for the sole benefit of a single creditor. Based upon the Court's previously noted financial analysis and the benefit to the estate derived from the Proposed Settlement, the third *Iridium* Factor supports settling the first cause of action.

**C. *Iridium* Factors 4-7: Whether Other Parties in Interest Support the Settlement; the Competency and Experience of Counsel Supporting the Settlement and the Experience and Knowledge of the Bankruptcy Court Judge Reviewing the Settlement; the Nature and Breadth of Releases to be Obtained by Officers and Directors; and the Extent to Which the Settlement is the Product of Arm's Length Bargaining.**[15]

Based upon the facts of this matter, the remaining four *Iridium* Factors are either inapplicable or uncontested by the parties' multiple submissions. The Court will briefly address each.

---

[15] Endurance states, "[It] is not challenging the experience or knowledge of the Court or the competence or experience of counsel (Iridium factor 5) or that the settlement was the product of arm's length bargaining (Iridium factor 7). Further, Iridium factor 6 regarding officer and director releases seems inapplicable." (ECF No. 491 at 12 n.6).

11

There is no surprise each party supports their own parochial interests; the Plaintiff and

Defendants support the Proposed Settlement but Creditor objects to same. Thus, the fourth

*Iridium* Factor does not weigh in favor of or against settling the first cause of action.

No one has challenged the opposing counsels' or the Court's competency, experience or

knowledge. Accordingly, the fifth *Iridium* Factor supports settling the first cause of action.

The sixth *Iridium* Factor is not applicable to this matter.

Trustee Ehrlich indicates, "The parties have vigorously litigated the claims . . . [and] [t]he

parties reached the Settlement Agreement after several years of discussion and mediation

sessions. Accordingly, the Settlement Agreement was the result of arm's length bargaining . . . ."

(ECF No. 469 at ¶¶ 48-50). Endurance does not disagree. Therefore, the seventh *Iridium* Factor

weighs in favor of settling the first cause of action.

In sum, the first, second, third, fifth and seventh *Iridium* Factors support settling the first

cause of action and the remaining two factors are either neutral or inapplicable. For all these

reasons, the Court's analysis of the *Iridium* Factors supports settling the first cause of action.

**III.    The Second Cause of Action – Accounting of Rents.**

Trustee Ehrlich indicates the rent amount is speculative. (ECF No. 490 at ¶ 18). However,

the Defendants should have records available that provide the necessary information, including

the net amount of the rent received during the related rental period(s).[16] As the 9019 Motion is

currently presented, the Court cannot evaluate the reasonableness of settling the second cause of

action due to the dearth of information provided.

The Proposed Settlement requires Trustee Ehrlich to dismiss the AP with prejudice and to

release the claim for rents against both Defendants. (ECF No. 469 at ¶ 14). Yet, questions abound

---

[16] To be clear, Trustee Ehrlich is not being asked to personally maintain tenant relations. Instead, he is charged with the responsibility of Trustee Wolinsky's demand for information and marshalling of estate assets.

ranging from the simple, such as how much rental income was collected and for what months, to

the complex, such as whether a charge may be owed by Christi for her use of the Hawaii Property

during the bankruptcy proceeding. Endurance points out the 9019 Motion, as submitted, indicates

Trustee Ehrlich is waiving the second cause of action despite at least $165,000.00 of rental

income having been collected.[17] The Debtor indicates past tenants paid $60,000.00 to rent the

Hawaii Property for up to 165 days per year. (ECF No. 491-3, Exhibit A). However, Plaintiff has

not provided legal or factual support for his analysis which deducts annual expenses from the

rents received despite the Hawaii Property only being rented for up to 165 days of each year. The

lack of justification for settling the claim for rental income prevents the Court from fulfilling its

obligation of determining whether the Proposed Settlement is within the lowest range of

reasonableness and therefore fair and equitable.

The Court cannot separate the two causes of action to approve the first without deciding

the second. *In re Breland*, No. 16-2270, 2018 Bankr. LEXIS 402, at *19 (Bankr. S.D. Ala. Feb.

14, 2018) ("[T]his Court will not bifurcate the settlement as it would result in piecemealing the

settlement in violation of the spirit of Rule 9019."). It has been noted:

> [A] court's discretion is limited and a proposed settlement cannot be piecemealed:
> "a court cannot sustain an objection to the settlement while granting the motion to
> approve the settlement. 'In so doing, the court changes the essential terms of the
> proposed settlement and violates the purpose and spirit of Federal Rule of
> Bankruptcy Procedure 9019 or decides issues not necessary....' Instead, the court's
> limited role is to determine whether the settlement should be approved or
> disapproved as proposed."

*In re Roper & Twardowsky, LLC*, 559 B.R. 375, 393 (Bankr. D.N.J. 2016) (internal citations
omitted).

---

[17] The Debtor's affirmation in support of the 9019 Motion represents $165,000.00 was collected in rental income
during the bankruptcy proceeding. (ECF No. 488-3 at ¶ 3).

Based upon the pleadings before it, the Court cannot adequately evaluate settlement of the second cause of action. Since this Court cannot piecemeal settlements, the 9019 Motion must be denied as currently presented.

## CONCLUSION

The Court is scheduling a pre-trial conference for **November 9, 2022, at 10:00 a.m.** The September 7, 2022, hearing on the "Motion to Compel" (ECF No. 475) shall be adjourned to same. Should a subsequent 9019 motion be made prior to that date, the conference will be further adjourned to the return date of that motion.

Dated: September 6, 2022
      Albany, New York

/s/ Robert E. Littlefield, Jr.
Hon. Robert E. Littlefield, Jr.
United States Bankruptcy Judge